IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C07-4087-MWB |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF's AND MICHAEL REED'S CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| MICHAEL ALLEN REED, individually and as trustee of TWO PONDS. CHAKRA, INDIGO, CIRCLE PHASE, and BLACK CANYON PROPERTIES; LOREN BROWN, as trustee of PEMBINA NATION TRIBAL COUNCIL and SUNTASSO; and JOHN SHERIDAN, as trustee of BLACK CANYON PROPERTIES; STEVE NELSON, as trustee of CANYON INVESTMENTS; RAY COX, as trustee of TWO PONDS, CHAKRA, INDIGO, and CIRCLE PHASE, | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . 10
    *B. Analysis Of Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *1. Defendant Reed's Motion for Summary Judgment* . . . . . . . . 15

       *a.  Necessity of a response to Reed's answer* . . . . . . . . . . . 15
       *b.  Reed's "payment" of his tax liabilities* . . . . . . . . . . . . 15
    **2.  *The government's Motion for Summary Judgment*** . . . . . . . 16
       *a.  Federal income tax liabilities* . . . . . . . . . . . . . . . . . . . 16
       *b.  Foreclosure of liens* . . . . . . . . . . . . . . . . . . . . . . . . . 19
       *c.  Sale of property* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

***III.  CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I.  INTRODUCTION AND BACKGROUND

## A.  Procedural Background

On October 4, 2007, plaintiff United States ("the government") filed its complaint and on April 10, 2008, filed its amended complaint in this matter seeking to reduce to judgment tax assessments against defendant Michael Reed, to foreclose federal tax liens, to set aside fraudulent conveyances, and to have the proceeds of the foreclosure sales distributed.  Both the government and defendant Reed have filed motions for summary judgment in this case (Dkt. Nos. 68 and 75).  In his motion, defendant Reed contends, *inter alia*, that the government is in default because it has not responded to Reed's answer and that he has satisfied his tax liabilities to the government by submitting $3,000,000 in payment to the court and the government.  The government has filed a timely resistance to defendant Reed's motion.

In its motion for summary judgment, the government asserts that judgment should be entered against defendant Reed for unpaid taxes for the period of 1998 through 2003

and penalties under 26 U.S.C. § 6702 for the period of 1998 through 2003. The government also requests that the court enter judgment declaring that defendants Pembina National Tribal Council and Suntasso have no interest in certain real and personal property. The government further argues in its summary judgment motion that it is entitled to foreclose federal tax liens it has on certain real and personal property which arose as a result of defendant Reed's unpaid federal tax liabilities and apply the proceeds of the sale of that property against Reed's unpaid federal tax liabilities. Defendant Reed has not filed a response to the government's motion.

## B. Factual Background

The summary judgment record reveals that the following facts are undisputed.

Defendant Michael Reed has not filed a federal income tax return since 1998. Defendant Reed submitted a 2002 Form 1040 that failed to report his income and 2002 Forms 1099 that reported zero income and purported to rebut previously filed 2002 Forms 1099 submitted to the Internal Revenue Service ("IRS") by third-parties that reported income to defendant Reed in 2002.

Prior to May 13, 1998, defendant Reed held title to real property legally described as:

    (1)    The West 425 feet of the North 400 feet of the Southeast Quarter of Section 34, Township 100 North, Range 36 West of the 5th P.M., Dickinson County, Iowa ("the 255th Avenue Property");

    (2)    Real property legally described as:

        Sec/twp/mg/1870-6-8- Legal W 30' of Lot 8 blk 6 Osborne's Addn. to Spirit Lake, City of Spirit Lake, Dickinson County, Iowa ("the 19th Street Property")

On May 13, 1998, defendant Reed transferred title to the 255th Avenue Property to Two Ponds for no consideration. On May 13, 1998, defendant Reed transferred title to the 19th Street Property to Circle Phase for no consideration.

In 1999, defendant Reed sent a letter and affidavit to the IRS contesting the applicability of federal income tax to him. Also in 1999, defendant Reed sent to the IRS a "Non-Negotiable Bill of Exchange" in the purported amount of $51,635,000. Along with the "Non-Negotiable Bill of Exchange", defendant Reed sent a copy of his birth certificate, indicating that he was born in the United States, driver's license, and social security card.

On August 2, 2002, the IRS sent defendant Reed written notice of the IRS's proposed tax assessments for Reed's unpaid federal income tax liabilities for the period of 1998 through 2002. In October 2002, defendant Reed called the IRS to determine the outstanding balance of his federal tax liabilities for the period of 1998 through 2002. Defendant Reed submitted a check to the IRS dated November 11, 2002, in the amount of $260,000 that was drawn on a closed bank account. Defendant Reed also submitted a check to the IRS dated December 18, 2002, in the amount of $5,200 that was drawn on a closed bank account. Defendant Reed knew at the time he submitted the checks to the IRS in the amounts of $260,000 and $5,200 that those checks were drawn on a closed bank account.

On February 11, 2004, the IRS sent a letter to defendant Reed to request the payment of his unpaid federal tax liabilities for the tax years 1998 through 2000. On February 11, 2004, the IRS also sent defendant Reed a letter notifying him that he had not filed a Form 1040 for the 2001 and 2002 tax years. On February 23, 2004, the IRS sent defendant Reed a Notice of Intent to Levy, via certified mail, and informed him of the

possibility of filing a Notice of Federal Tax Lien for his unpaid federal tax liabilities for the tax years 1998 through 2000.

Defendant Reed identified Bryan Malatesta as his representative on IRS Form 2848, power of attorney and declaration of representative. On December 29, 2003, Malatesta was enjoined from representing others before the IRS because he sold abusive tax schemes.

On March 11, 2004, the IRS filed a Notice of Federal Lien against defendant Reed. On March 16, 2004, defendant Reed, as a purported trustee of Two Ponds, transferred title to the 255th Avenue Property to Pembina Nation Tribal Council. On March 16, 2004, defendant Reed, as a purported trustee of Circle Phase, transferred title to the 19th Street Property to Pembina Nation Tribal Council. On March 23, 2004, Indigo transferred title to a red and white 1974 GMC truck (VIN: ending in 0221), a blue 2001 Ford pick-up (VIN: ending in 6253), and a silver 2004 Toyota Sequoia (VIN: ending in 7851), to Suntasso. On March 23, 2004, Chakra transferred title to a red 1947 Indian Chief motorcycle (VIN: ending in 5320), a black/red 2002 Indian Chief motorcycle (VIN: ending in 6180), and a red 1991 Harley-Davidson motorcycle (VIN: ending 2735), to Suntasso.

On July 15, 2005, the IRS filed Notices of Federal Tax Liens against Two Ponds, Suntasso, and Pembina Nation Tribal Council as nominees and/or transferees of defendant Reed. On August 5, 2005, defendant Reed sent to IRS Revenue Officer Nancy Alderton a "Complaint" in which he alleged that he was not "a legal term 'taxpayer' 'person' or 'individual' subject to the Internal Revenue Code." On August 22, 2006, Pembina Nation Tribal Council transferred title to the 19th Street Property and the 255th Avenue Property to Black Canyon Properties.

On October 26, 2006, Suntasso transferred title to the red and white 1974 GMC truck, the blue 2001 Ford pick-up, the silver 2004 Toyota Sequoia, the red 1947 Indian

Chief motorcycle, the black/red 2002 Indian Chief motorcycle, and the red 1991 Harley-Davidson motorcycle, to Canyon Investments. Pembina Nation Tribal Council and Suntasso, through their purported former trustee, Loren Brown, disclaimed any interest in the subject real estate and personal property.

Defendant Michael Reed has resided at the 255th Avenue Property from 1998 to the present. He does business at the 255th Avenue Property. Defendant Reed used nominee or sham entities, including Black Canyon Properties, Canyon Investments, and Suntasso, to conceal his assets, and to hinder and/or delay the collection of his federal income tax liabilities. Defendant Reed transferred title to the 255th Avenue Property to trust to avoid the collection of his federal income tax liabilities. He transferred title to the 255th Avenue Property to nominee or sham entities, including Black Canyon Properties. Defendant Reed transferred title to the 255th Avenue Property for no or nominal consideration. Defendant Reed still exercises dominion and control over the 255th Avenue Property. Black Canyon Properties holds the 255th Avenue Property as Reed's nominee or alter ego. Defendant Reed continues to personally use the 255th Avenue Property. Defendant Reed is the true, de facto, and equitable owner of the 255th Avenue Property.

Defendant Reed transferred title to the 19th Street Property to avoid the collection of his federal income tax liabilities. He transferred title to the 19th Street Property to nominee or sham entities including Black Canyon Properties. Defendant Reed transferred the title to the 19th Street Property for no or nominal consideration. Defendant Reed, however, still exercises dominion and control over the 19th Street Property. He uses the 19th Street Property for his own personal and business purposes. He continues to personally use the 19th Street Property. Black Canyon Properties holds the 19th Street Property as Reed's nominee or alter ego. Defendant Reed is the true, de facto, and equitable owner of the 19th Street Property.

Defendant Reed transferred title to the red and white 1974 GMC truck, the blue 2001 Ford pick-up, the silver 2004 Toyota Sequoia, the red 1947 Indian Chief motorcycle, the black/red 2002 Indian Chief motorcycle, and the red 1991 Harley-Davidson motorcycle (collectively "the subject personal property"), to trusts to avoid the collection of his federal income tax liabilities. He transferred title to the subject personal property to nominee or sham entities, including Canyon Investments and Suntasso. He transferred the subject real property for no or nominal consideration. Defendant Reed still exercises dominion and control over the subject real property. He continues to use the subject personal property for his own personal and/or business use. Suntasso and Canyon Investments hold the subject personal property as Reed's nominee or alter ego. Defendant Reed is the true, defacto, and equitable owner of the subject personal property.

A delegate of the United States Secretary of the Treasury made proper and timely assessments against and gave notice of and demand for payment from defendant Michael Reed for unpaid federal income taxes, statutory additions and penalties assessed under 26 U.S.C. § 6702 as follows:

| Type (Tax Year) | Assessment Date(s) | Amount of Assessment | Unpaid Balance as of 8/12/2008 |
|---|---|---|---|
| Form 1040 (1998) | 10/6/2003 | Est. Tax Penalty-$1,637.00 Late Filing Penalty-$8,051.00 Tax-$35,785.00 Interest-$16,528.57 Failure to Pay Penalty-$8,946.25 Total: $70,947.82 | $95,818.37 |

| | | | |
|---|---|---|---|
| Form 1040 (1999) | 12/8/2003 | Est. Tax Penalty-$5,690.00 Late Fling Penalty-$26,453.00 Tax-$117,572.00 Interest-$40,222.66 Failure to Pay Penalty-$25,865.84 Total: $215,803.50 | $295,060.30 |
| Form 1040 (2000) | 12/30/2002 2/17/2003 4/14/2003 12/8/2003 | Dishonored Check Penalty-$5,200.00 Dishonored Check Penalty-$104.00 Dishonored Check Penalty-$104.30 Est. Tax Penalty-$3,972 Tax-$74,365.00 Total: $100,475.30 | $175,549.07 |
| Form 1040 (2001) | 11/15/2004 | $39,329.49 | $66,984.84 |
| Form 1040 (2002) | 11/15/2004 | $16,959.69 | $27,327.67 |
| Form 1040 (2003) | 11/14/2005 | $43,357.84 | $62,292.41 |
| 6702 Penalty (1998) | 5/16/2005 | $500.00 | $631.44 |
| 6702 Penalty (1999) | 5/16/2005 | $500.00 | $631.44 |
| 6702 Penalty (2000) | 5/16/2005 | $500.00 | $631.44 |
| 6702 Penalty (2001) | 5/16/2005 | $500.00 | $631.44 |

| | | | |
|---|---|---|---|
| 6702 Penalty (2002) | 3/28/2005 | $500.00 | $636.51 |
| 6702 Penalty (2003) | 5/16/2005 | $500.00 | $631.44 |
| | Total: | $489,873.64 | $726,826.37 |

Defendant Reed has not paid the assessed amounts set out above and remains indebted to the government for the unpaid balance plus statutory additions and interest accruing from the dates of assessment. The unpaid balance as of August 12, 2008, including unassessed interest and costs, is $726,826.37.

The United States Internal Revenue Service filed with the County Recorder of Dickinson County, Iowa, Notices of Federal Tax Liens relating to the assessments against the following persons and entities:

| Name of Person or Entity | Type of Tax | Tax Period(s) Ending | Date of Notice of Federal Tax Lien Filed: |
|---|---|---|---|
| Michael Reed | 1040 | 12/31/1998 12/31/1999 12/31/2000 | 3/11/2004 |
| Two Ponds (as transferee or nominee of Michael Reed) | 1040 | 12/31/1998 12/31/1999 12/31/2000 | 7/15/2005 |
| Pembina Nation Tribal Council (as transferee or nominee of Michael Reed) | 1040 | 12/31/1998 12/31/1999 12/31/2000 | 7/15/2005 |

| | | | |
|---|---|---|---|
| Suntasso (as transferee or nominee of Michael Reed) | 1040 | 12/31/1998 12/31/1999 12/31/2000 | 7/15/2005 |

The government seeks to foreclose federal tax liens on the following real and personal property:

(1)     The 255th Avenue Property;

(2)     the 19th Street Property;

(3)     1947 red Indian Chief motorcycle (VIN: ending in 5320);

(4)     1974 red and white GMC truck (VIN:  ending in 0221);

(5)     2002 black/red Indian Chief motorcycle (VIN:  ending in 6180);

(6)     2001 blue Ford pick-up (VIN:  ending in 6253);

(7)     1991 red Harley-Davidson motorcycle (VIN:  ending 2735);

(8)     2004 silver Toyota Sequoia (VIN: ending in 7851); and,

(9)     1971 white Fan motorhome (VIN:  ending in 6900).


## II.  LEGAL ANALYSIS

### A.  Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the

expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484,

1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c),

the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal

theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgment is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

## B. Analysis Of Issues

Because there is little overlap in the issues raised in the parties' motions, the court will proceed by addressing the parties' motion *seriatim*, commencing with defendant Reed's motion.

### 1. Defendant Reed's Motion for Summary Judgment

#### a. Necessity of a response to Reed's answer

The first issue the court is called upon to address is defendant Reed's assertion that the government is in default because it has not filed a response to his answer. Federal Rule of Civil Procedure 7(a) provides as follows:

> **(a) Pleadings**. Only these pleadings are allowed:
>
> (1) a complaint;
> (2) an answer to a complaint;
> (3) an answer to a counterclaim designated as a counterclaim;
> (4) an answer to a crossclaim;
> (5) a third-party complaint;
> (6) an answer to a third-party complaint; and
> (7) if the court orders one, a reply to an answer.

FED. R. CIV. P. 7(a).

The court notes that defendant Reed's answer did not assert any counterclaims, or crossclaim and the court has not directed the government to reply to defendant Reed's answer. Accordingly, the government was not required to file a reply to defendant Reed's answer and, as such, is not in default. Therefore, this portion of defendant Reed's motion is denied.

#### b. Reed's "payment" of his tax liabilities

Defendant Reed also contends that he is entitled to summary judgment because he and defendant Raymond Cox, as trustee of Two Ponds, Chakra, Indigo and Circle Phase, have already provided payment to the government in the sum of $3,000,000 and therefore his outstanding tax liabilities have been satisfied. The government responds that defendant Reed has merely submitted "bogus 'bonds'" to the government and, therefore, he has not satisfied his federal tax liabilities.

Defendant Reed has attached to his motion for summary judgment copies of the purported "bonds" which he claims satisfied his outstanding federal tax liabilities. These two documents are denominated "Bond to discharge attachment for debt Via Pass-through Account Michael A. Reed 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" and "Bond to discharge attachment for debt Via Pass-through Account Raymond M. Cox 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". Both documents purport to be payable on demand "through the back office for settlement via the pass through account . . . at the treasury window, Department of the Treasury, 1500 Pennsylvania Ave., N.W., Washington DC 20220, for the settlement and adjustment of the account enumerated herein." The court concludes that both documents are works of legal fiction, neither of which constitutes a viable financial instrument or represents a recognized legal medium of exchange the tendering of which would satisfy defendant Reed's outstanding federal tax liabilities. *See Don E. Williams Co. v. Commissioner of Internal Revenue*, 429 U.S. 569, 583 (1977) (holding that "promissory note", even when payable on demand and fully secured, is not the equivalent of a check and does not constitute a medium of exchange). Accordingly, defendant Reed's presentation of these documents to the government failed to satisfy his outstanding federal tax liabilities. Therefore, this portion of defendant Reed's motion is denied.

### 2. The government's Motion for Summary Judgment

### a. Federal income tax liabilities

Section 6321 of the Internal Revenue Code provides that the United States has a lien on all property belonging to an individual who is liable for unpaid taxes. 26 U.S.C. § 6321. *See EC Term of Years Trust v. United States*, 127 S. Ct. 1763, 1765 (2007); *United States v. Craft*, 535 U.S. 274, 291 (2002). The Supreme Court has given an expansive reading to this statutory language, stating that it "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Stonehill,*

83 F.3d 1156, 1158 (9th Cir. 1996) (citing *United States v. National Bank of Commerce,* 472 U.S. 713, 719-20 (1985)). Unless another date is fixed by law, a lien imposed under § 6321 arises at the time the tax assessment is made and continues "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322; *In re Nerland Oil, Inc.*, 303 F.3d 911, 916 (8th Cir. 2002) ("A federal tax lien attaches and becomes choate at assessment"); *United States v. Jepsen,* 268 F.3d 582, 584 (8th Cir. 2001) (noting that tax assessment creates a lien in favor of the United States on all property and rights to property pursuant to 26 U.S.C. §§ 6321, 6322).

The government asserts that summary judgment should be granted against defendant Reed for the assessments of unpaid taxes and penalties for the tax years 1998 through 2003. For the reasons that follow, the court agrees with the government.

"'In an action to collect federal taxes, the government bears the initial burden of proof.'" *In re Olshan,* 356 F.3d 1078, 1084 (9th Cir. 2004) (*quoting Palmer v. I.R.S.,* 116 F.3d 1309, 1312 (9th Cir. 1997)); *see Carson v. United States,* 560 F.2d 693, 696 (5th Cir. 1977). The government's burden can be met by presenting federal tax assessments. *United States v. Stonehill,* 702 F.2d 1288, 1293 (9th Cir. 1983). Certificates of Assessments and Payments ("Form 4340s") are highly probative and in the absence of contrary evidence, are sufficient to establish a tax assessment was properly made and notice and demand for payment were sent. *See United States v. Strebler*, 313 F.2d 402, 403-04 (8th Cir. 1963) ("The law is that such assessment is presumptively correct; and 'the burden is on the taxpayer to overcome this presumption' by countervailing proof.") ; *see Huff v. United States,* 10 F.3d 1440, 1445 (9th Cir. 1993) ("Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed. . . ."); *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir. 1992) ("Official

certificates, such as Form 4340, can constitute proof of the fact that the [tax] assessments were actually made.").

When supported by a minimal factual foundation, the IRS's assessments for taxes and related penalties are entitled to a presumption of correctness and the burden shifts to the taxpayer to show the assessment is incorrect. *See In re Olshan,* 356 F.3d at 1084; *see also Palmer,* 116 F.3d at 1312; *Helvering v. Taylor,* 293 U.S. 507, 515 (1935); *Avco Delta Corp. Canada Ltd. v. United States,* 540 F.2d 258, 262 (7th Cir. 1976); *United States v. Rexach,* 482 F.2d 10, 17 (1st Cir. 1973); *Psaty v. United States,* 442 F.2d 1154, 1159-60 (3d Cir. 1971); *United States v. Strebler,* 313 F.2d 402, 403-04 (8th Cir. 1963). If the taxpayer fails to rebut the presumption, the government is entitled to judgment as a matter of law. *See Adams v. United States,* 358 F.2d 986, 994 (Ct. Cl. 1966); *see also Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993) (finding taxpayers' declaration that they did not receive notice of the tax assessment was insufficient to show a genuine issue of fact for trial where IRS presented Form 4340).

Here, the government has submitted Form 4340s calculating defendant Reed's tax liability and the related penalties for 1998 through 2003. *See* Gov't Ex. 1. Because the government's showing satisfies the minimal factual foundation necessary, the assessments receive a presumption of correctness and the burden of proof shifts to defendant Reed to demonstrate any error. Defendant Reed, however, has not put forth any evidence that there are deficiencies in the government's Form 4340s. In fact, by failing to answer the government's First Set of Admissions, defendant Reed has admitted that he owes taxes and penalties in the exact amounts stated in the IRS's assessments. *See Luick v. Graybar Elec. Co.,* 473 F.2d 1360, 1361-62 (8th Cir. 1973) ("Unanswered requests for admissions render the matter requested conclusively established for the purpose of that suit."); *Essex Ins. Co. v. McManus*, 299 F. Supp. 2d 939, 942 (E.D. Mo. 2003) (quoting *Luick*). Since

defendant Reed has failed to identify any facts that would rebut the legitimacy of the 4340s, the only permissible inference is that the assessments of defendant Reed's tax liability are valid as a matter of law. *See Adams,* 358 F.2d at 994. Accordingly, the court finds that the assessments of defendant Reed's tax liability and penalties for the tax years 1998 through 2003 are correct as a matter of law. Therefore, the court grants the government's motion for summary judgment against defendant Reed for the federal tax assessments made against him for tax years 1998 through 2003.

Pursuant to 26 U.S.C. §§ 6601(a) and (e)(2)(A), 6621, and 6622, the United States is entitled to statutory interest on income taxes and associated penalties imposed as of the date of notice and demand, which accrues daily until paid in full. *See Purcell v. United States,* 1 F.3d 932, 943 (9th Cir. 1993). Once a court validates a tax assessment, awarding statutory interest is mandatory. *See id.* (noting that § 6601(e)(2)(A) is a "binding statutory directive" to award interest). Therefore, the court grants summary judgment with respect to the statutory interest and penalties on the assessments for tax years 1998 through 2003 and orders that judgment be entered against defendant Reed in the amount of $726,826.37 for those income tax liabilities, associated penalties and interest plus statutory additions accruing from August 12, 2008.

### b. Foreclosure of liens

Defendant Reed's Federal Tax Liens attached to the following property prior to Reed's conveyance of them to other entities:

(1)     The 255th Avenue Property;

(2)     the 19th Street Property;

(3)     1947 red Indian Chief motorcycle (VIN: ending in 5320);

(4)     1974 red and white GMC truck (VIN: ending in 0221);

(5)     2002 black/red Indian Chief motorcycle (VIN: ending in 6180);

19

(6)     2001 blue Ford pick-up (VIN:  ending in 6253);

(7)     1991 red Harley-Davidson motorcycle (VIN:  ending 2735);

(8)     2004 silver Toyota Sequoia (VIN: ending in 7851); and,

(9)     1971 white Fan motorhome (VIN:  ending in 6900).

Pursuant to 26 U.S.C. § 6321, after notice and demand, the United States obtains a lien "upon all property and rights to property, whether real or personal, belonging to" the taxpayer in the amount of the unpaid taxes, penalties, and interest.  A lien arises as of the date of the assessment and continues until paid.  *See* 26 U.S.C. § 6322.  The United States's tax liens are perfected upon assessment, *see United States v. Vermont,* 377 U.S. 351, 355 (1964), and are effective against the taxpayer and other lienholders without filing notice.  *See* 26 U.S.C. §§ 6321, 6323(a).  For a tax lien to be valid against a purchaser, however, the United States must file a notice of the lien in the appropriate location more than thirty days prior to the sale.  *See* 26 U.S.C. §§ 6323(b), (f); 7425(b) (stating that nonjudicial sale of property is subject to United States's lien if notice was filed or recorded in the proper location more than thirty days before such sale).   The first of Reed's Federal Tax Liens was perfected and, therefore, became valid on October 6, 2003-the date of assessment of Reed's 1998 tax liability.  *See* Gov't Ex. 1.  The next two  Federal Tax Liens were perfected on December 8, 2003-the date of assessment of Reed's 1999 and 2000 year tax liabilities.  *See* Gov't Ex. 1.  Thus, the Federal Tax Liens attached to the property described above prior to any transfer of the title to that property and, accordingly, the

transferees took the property subject to the government's liens.[1] Therefore, the court orders that defendant Reed's Federal Tax Liens be foreclosed on the
the following property:

    (1)    The 255th Avenue Property;

    (2)    the 19th Street Property;

    (3)    1947 red Indian Chief motorcycle (VIN: ending in 5320);

    (4)    1974 red and white GMC truck (VIN: ending in 0221);

    (5)    2002 black/red Indian Chief motorcycle (VIN: ending in 6180);

    (6)    2001 blue Ford pick-up (VIN: ending in 6253);

    (7)    1991 red Harley-Davidson motorcycle (VIN: ending 2735);

    (8)    2004 silver Toyota Sequoia (VIN: ending in 7851); and,

    (9)    1971 white Fan motorhome (VIN: ending in 6900).

### c. Sale of property

Pursuant to 26 U.S.C. § 7403, the United States may enforce a lien by commencing an action in the district court, joining all parties with an interest in the property, and obtaining a judicial sale of the property. *See United States v. Rodgers,* 461 U.S. 677, 691-92 (1983) (stating that § 7403 grants the power to a federal district court to order the sale of a delinquent taxpayer's home); *United States v. Bierbrauer*, 936 F.3d 373, 374 (8th Cir.

---

[1]The court concludes, based on the disclaimer of interest filed by Loren Brown, in his capacity as trustee of Suntasso and Pembina Nation Tribal Council, that defendants Suntasso and Pembina Nation Tribal Council have no interest in the above mentioned real and personal property. Similarly, the court finds that defendants Black Canyon Properties and Canyon Investments hold the real and personal property transferred to them by defendant Reed as nominees or alter egos of defendant Reed. Accordingly, the government's federal tax liens against defendant Reed attached to the real and personal property held by these entities which Reed transferred to them in this capacity.

1991) (noting that "[s]ection 7403 of the Internal Revenue Code authorizes a federal district court to order a sale of property in which a delinquent taxpayer has an interest in order to satisfy that taxpayer's debt".); *see also In re Pletz,* 221 F.3d at 1118 (citing *Rodgers*, 461 U.S. at 693-94). Section 7403(c) states, in pertinent part, that

> [t]he court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

Under § 7403(c), "in order to enforce a lien and collect on justly owed debts, the district court is empowered to order the sale of [entireties] property to satisfy the tax debt of one tenant, so long as it compensates the nondebtor spouse for his or her interest." *In re Pletz,* 221 F.3d at 1117-18 (noting that § 7403 "explicitly allows a lien creditor like the IRS to sell not only a debtor's interest in a property, but the entire property held as a tenancy by the entirety by the debtor and his nondebtor wife"); *see also Rodgers,* 461 U.S. at 680 (observing that a federal district court is empowered to order sale of the property itself, not just the delinquent taxpayer's interest in the property). Here, the government has complied with § 7403. Defendant Reed has refused to pay his federal tax liabilities, and as a result, this court has foreclosed the federal tax liens against the real and personal property identified above. The government commenced this action in the district court and all parties "having liens upon or claiming any interest in the property involved in such action" at the time of filing have been named as defendants. Accordingly, pursuant to §

7403, the court orders the sale of the following real and personal property to satisfy defendant Reed's federal tax liens:

(1)    The 255th Avenue Property;

(2)    the 19th Street Property;

(3)    1947 red Indian Chief motorcycle (VIN: ending in 5320);

(4)    1974 red and white GMC truck (VIN: ending in 0221);

(5)    2002 black/red Indian Chief motorcycle (VIN: ending in 6180);

(6)    2001 blue Ford pick-up (VIN: ending in 6253);

(7)    1991 red Harley-Davidson motorcycle (VIN: ending 2735);

(8)    2004 silver Toyota Sequoia (VIN: ending in 7851); and,

(9)    1971 white Fan motorhome (VIN: ending in 6900).


### III.  CONCLUSION

For the reasons stated above, because the court denies defendant Reed's Motion for Summary Judgment and grants the government's Motion for Summary Judgment and orders the following:  that judgment be entered against defendant Reed in the amount of $726,826.37 for those income tax liabilities, associated penalties and interest plus statutory additions accruing from August 12, 2008; that defendant Reed's federal tax liens be foreclosed on the following real and personal property:

(1)    The 255th Avenue Property;

(2)    the 19th Street Property;

(3)    1947 red Indian Chief motorcycle (VIN: ending in 5320);

(4)    1974 red and white GMC truck (VIN: ending in 0221);

(5)    2002 black/red Indian Chief motorcycle (VIN: ending in 6180);

(6)    2001 blue Ford pick-up (VIN: ending in 6253);

(7)     1991 red Harley-Davidson motorcycle (VIN:  ending 2735);

(8)     2004 silver Toyota Sequoia (VIN: ending in 7851); and,

(9)     1971 white Fan motorhome (VIN:  ending in 6900);

and the sale of that real and personal property.

**IT IS SO ORDERED.**

**DATED** this 23rd day of March, 2009.

_Mark W. Bennett_

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA